# Gillis et al. v. Anderson et al.

(Decided Nov. 23, 1934.)

TYE, SILER, GILLIS & SILER and GEO. W. HATFIELD for appellants.

H. M. CLINE and PECK, SHAFFER & WILLIAMS for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

This action is a suit under the Declaratory Judgment Act, originally instituted by the plaintiffs, H. C.

Gillis, J. E. Terry, F. J. Le Moyne, and William B. Mc-Ilvaine, trustees, as taxpayers in McCreary county, against the defendant George P. Anderson, as sheriff of McCreary county. The action at its inception had for its object the single purpose of enjoining the collection of an alleged illegal annual road tax of 20 cents on the $100 of taxable property in McCreary county. It was alleged in the petition and admitted in the answer of the sheriff that McCreary county was, at the time of the institution of this action, and for many years prior thereto had been, levying and collecting annually two 20-cent road taxes, under the authority of section 157a of the Constitution of Kentucky. It had been collecting one annual 20-cent road tax under section 4307b-1 of the Kentucky Statutes, and another 20-cent road tax to fund a $200,000 bond issue under section 4307 of those Statutes.

The case was submitted to the circuit court for judgment without proof as the facts were admitted by the pleadings. The circuit court adjudged that one of the 20-cent road taxes was invalid and enjoined the sheriff from collecting more than one such tax, but did not determine which of the two taxes was invalid.

An appeal was prosecuted to this court by the county attorney on behalf of the sheriff, on the ground that the circuit court should have determined which of the two taxes was invalid. On that appeal the judgment was reversed. Anderson, Sheriff, v. Gillis et al., 242 Ky. 404, 46 S. W. (2d) 508. In the opinion we did not undertake to determine which of the two 20-cent road taxes was illegal, but held that one of them was necessarily void. The case was sent back to the circuit court with directions that the plaintiffs be required to bring into the case McCreary county and a representative or representatives of the bondholders to defend for all the bondholders and for further proceedings not inconsistent with the opinion. Upon the return of the case to the circuit court, an amended petition was filed, in which McCreary county joined as a plaintiff. The Bankers' Reserve Life Company of Omaha, Neb., and the unknown owners of the bonds of McCreary county, dated October 1, 1922, were made defendants. Lee Douglas and Rutledge Smith, receivers of Caldwell & Co., were also made defendants. A warning order was entered against all of the nonresident and unknown owners of the bonds of McCreary county. Later still

another amended petition was filed, making Mrs. Marguerite H. Doermann a defendant. She is a resident of Kenton county, Ky., and the owner of some of the bonds. Mrs. Doermann was summoned in Kentucky. The Bankers' Reserve Life Company of Omaha, Neb., filed an answer and counterclaim, in which it admitted that it was the owner of $15,000 of the bonds of McCreary county. The Royal Neighbors of America also filed an answer and counterclaim, in which this fraternal beneficiary society admitted that it had purchased $151,000 of the bonds of McCreary county and still owned $143,000 of such bonds, the remainder having been paid. The circuit court entered an order directing that the Royal Neighbors of America and the Bankers' Reserve Life Company, which had filed answers and counterclaims in this action, be designated and appointed by the court to represent and defend this action for all of the holders of the $200,000 of bonds, the validity of which is questioned in the action. Elaborate pleadings were filed. Proof was taken by depositions. The case was submitted for judgment, and on December 20, 1933, the circuit court entered a judgment upholding the validity of the bonds, and adjudging that the levy of 20 cents on each $100 of taxable property be annually made until all the bonds are paid is valid, and commanding George P. Anderson as sheriff of McCreary county, and his successors in office, to collect said tax for each and every year up to and including 1952, and if necessary thereafter, until the payment of principal and interest of said bonds has been made in full. It was further adjudged that the annual road tax of 20 cents on the $100 voted in 1927 for ten years is invalid and void. The sheriff and his successors were perpetually enjoined from collecting same. From that judgment, this appeal is prosecuted.

The record presents for determination the question whether the bonds issued by McCreary county in 1922 are valid or invalid, and if valid whether they are valid to the full extent of the $200,000 issued or some amount less than that. From the record, it appears that in 1918 an election was held pursuant to section 4307b-1 of the Kentucky Statutes, at which the voters of McCreary county voted that an annual road tax of 20 cents on the $100 should be levied for ten years. Thereafter and until 1922 the fiscal court levied this tax for each year and continued to do so even after the year

1922. On the 9th day of September, 1922, pursuant to an order theretofore entered by the McCreary county court, there was submitted to the voters of McCreary county the question whether or not the county should issue $200,000 of bonds for the purpose of building roads and bridges in McCreary county. A majority of the voters was in favor of the issuance of such bonds. Later, by order, the bonds were issued and a 20-cent tax pursuant to the authority conferred by section 157a of the Constitution was levied by the court to run during the life of the bonds. The order levying this 20-cent tax provided that should this levy be at any time insufficient for the purpose of paying the interest on the bonds and to create a sinking fund there should be appropriated out of the 50-cent tax levy for general purposes an annual tax of a sufficient amount to make up any such deficit. It is first contended by the appellants that McCreary county having in 1918 voted the annual tax authorized by section 4307b-1 for a period of ten years, the power of the county had been exhausted and it could not in 1922 revoke the action taken in 1918 and provide that the tax authorized by section 157a of the Constitution should be used for bond purposes. It is argued, first, that the fiscal court called the 1918 election and the county court the 1922 election, and that the county court cannot undo what the fiscal court has done. The answer to this is, of course, that it is the voters who determine what shall be done, and if their action in 1922 was otherwise valid, it is the people and not the county court or fiscal court which is revoking the action of 1918 which itself is the act of the people. We regard the legality of the diversion of this 20-cent levy authorized by the Constitution from the pay-as-you-go method provided by section 4307b-1 to the bond method provided by section 4307 as concluded by the opinion of this court in Smith v. Livingston County, 195 Ky. 382, 242 S. W. 612, 617. In that case the fiscal court in 1918 was authorized by an election then held to levy a 20-cent tax under section 4307b-1 for a period of ten years. In 1920 the county, pursuant to section 4307 of the Statutes, voted to issue $200,000 of road bonds, and the question arose as to the validity of these bonds in the light of the fact that the 20-cent tax authorized by section 157a had theretofore been voted on the ten-year plan provided for by section 4307b-1. Holding that so much of the 20-cent tax as was needed to pay the interest and principal of the bonds would have to be de-

voted to that purpose and to that extent the 1920 election superseded the 1918 election, this court said:

"Section 157a of the Constitution provides that an election held under that section, with the result favorable to incurring the indebtedness, carries with it the power on the part of the fiscal court to levy and collect an annual tax of not exceeding 20 cents upon each $100 of the assessed valuation of the county, for the purpose of paying the interest and creating a sinking fund to pay the indebtedness. This levy may be made in addition to the tax of 50 cents for general purposes, provided for by section 157, supra, and section 4308, Ky. Stats., provides that, when bonds of the county are sold for road and bridge purposes, the fiscal court shall levy a tax to provide for the interest and create a sinking fund to pay the principal. Sections 4307b-1 to 4307b-6, Ky. Stats., inclusive, were enacted by the authority of section 157a, supra, to regulate the manner of authorizing the 20-cent additional tax for the construction of roads and bridges, when it was desired to levy same without a bond issue, but when bonds are issued representing an indebtedness created under section 157a, supra, the 20-cent tax, or a sufficiency of it, levied under section 4307b-1 to 4307b-6, inclusive, must be appropriated to pay the interest on the bonds, and to create a sinking fund for their redemption, regardless of when the tax was authorized. Bird v. Asher [170 Ky. 726, 186 S. W. 663], supra; Collier v. Bourbon County Fiscal Court, 188 Ky. 491, 223 S. W. 149. * * * It is now insisted that the bonds authorized by the election on January 1, 1920, cannot be issued or sold, because the funds arising from the 20-cent tax levy authorized by the election of April 6, 1918, has been otherwise appropriated by an order of the fiscal court, and cannot now be applied to pay the interest on the bonds, and to create a sinking fund for their final liquidation, and while the fiscal court may, if it desires, appropriate a part of the 50-cent levy authorized by section 157, supra, to take care of the bonds, it cannot be required to do so, and hence, if the bonds were issued, there would be no method of enforcing their payment, and to issue bonds without making provision for their final payment is not allowable."

After disposing of a contention as to certain collateral contractual matters not here pertinent, the opinion concludes:

"Hence it is concluded that the 20-cent tax, or a sufficiency for that purpose, must be appropriated to paying the interest on and creating a sinking fund for the liquidation of the bonds proposed to be issued, and the court is authorized to do so."

To the same effect is the case of Collier v. Bourbon Fiscal Court, 188 Ky. 491, 223 S. W. 149, 150. It is true that in that case the voters on the same day voted a levy under section 4307b-1 and voted a bond issue under section 4307, but in holding that so much of the 20-cent tax authorized by section 157a of the Constitution as was needed for the bond issue should be paid first and what was left might be devoted to the purposes provided for by section 4307b-1 we said:

"I want, however, to further say in this connection that, when the people of a county vote a bond issue under section 4307 * * * and also vote the special road tax under section 4307b-1, it is the mandatory duty of the fiscal court to annually levy and set apart a sufficient sum out of the 20-cent road tax authorized by section 157a of the Constitution to pay the interest on and liquidate the bonds that may be issued when they mature. Nor does it make any difference which proposition is first submitted and adopted, because, whenever both are in effect at the same time, the bond issue must first be taken care of out of the tax levied under section 157a of the Constitution; and only such part of this special road tax as annually remains after first setting aside a sum sufficient to take care of the bond issue can be used in building roads or bridges, under section 4307b-1."

We thus conclude that the voting of the 20-cent levy for ten years in 1918 under section 4307b-1 of the Statutes did not preclude the voting to issue bonds under section 4307 in 1922.

We are next confronted with the question: To what extent was the issuance of the bonds in 1922 valid—to the full extent of the $200,000, or only to some less amount?

Section 157a of the Constitution provides:

"The credit of the Commonwealth may be given, pledged or loaned to any county of the Commonwealth for public road purposes, and any county may be permitted to incur an indebtedness in any amount fixed by the county, not in excess of five per centum of the value of the taxable property therein, for public road purposes in said county, provided said additional indebtedness is submitted to the voters of the county for their ratification or rejection at a special election held for said purpose, in such manner as may be provided by law and when any such indebtedness is incurred by any county said county may levy, in addition to the tax rate allowed under section 157 of the Constitution of Kentucky, an amount not exceeeding twenty cents (20 cents) on the one hundred dollars ($100.-.00) of the assessed valuation of said county for the purpose of paying the interest on said indebtedness and providing a sinking fund for the payment of said indebtedness.''

It is conceded that the amount of the bond issue of 1922 is within the limit of 5 per centum of the value of the taxable property of McCreary county as of the time said bonds were voted and issued. But it is contended that they are not within the limit of an amount which could be liquidated, principal and interest, within the bond period by the 20-cent levy authorized by this section of the Constitution. Into this contention enters the difference between the parties as to which assessment is to be used as the basis for calculating the amount to be raised by the levy, the one as of July 1, 1921, oụ the one as of July 1, 1922, as well as the difference between them as to whether the levy is to be calculated on all the taxable property of the county or only so much thereof as is available for taxation for local or county purposes. The parties are also in sharp conflict as to what the evidence on any of these theories shows the taxable property to have been worth as well as the competency of the testimony adduced on either side to sustain the respective contentions as to such worth.

The case of Bird v. Asher, 170 Ky. 726, 186 S. W. 663, settles the proposition that the amount of a bond issue voted under section 4307 of the Statutes is limited, not only by the 5 per centum limitation above noted, but also by the further limitation that it must be

such that can be liquidated principal and interest within the bond period by the 20-cent levy authorized by section 157a of the Constitution, and this too although the county may be willing to supplement this 20-cent tax levy with an additional appropriation out of the 50-cent levy for general purposes authorized by section 157 of the Constitution.

It must also be conceded that this court has held that the assessed value of the property subject to the 20-cent levy at the time bonds are sold controls the factor of limitation resting on the assessment. Jones, Sheriff, v. Citizens' Bank of Hartford, 228 Ky. 699, 15 S. W. (2d) 468; Sutherland v. Board of Education of Corbin, 209 Ky. 351, 272 S. W. 887. But in this world of practical affairs, a rule of law must be given a practical construction. These bonds here in question were voted in the fall of 1922, and issued in October of that year. True it is that the assessment date of July 1, 1922, had then passed, but no one could in October, 1922, tell what the assessment as of July 1, 1922, would be. Without going into detail or citing the statutes, it is sufficient to say that not until well in the calendar year of 1923 would the assessment as of July 1, 1922, become complete and final and the figures be actually known. To say that a bond issue sold in the fall of 1922 would have to depend for its validity in whole or in part on the fortuitous result of an assessment which could not be known until months after the sale and issuance of the bonds would in effect destroy the right of a county to ever issue any bonds except between the time when the county assessment becomes complete and final and the first of July following—in most instances a very short period of time. This would reduce the rule announced to an absurdity. Whilst not departing an iota from the rule that the assessed value of the property at the time bonds are sold determines the limitation on their amount, we are of the opinion that the assessed value must be presumed to be that of the last complete and final assessment, here that as of July 1, 1921. No other rule would be practical and work justice.

Addressing ourselves to the evidence as to what the assessment as of July 1, 1921, was, we find ourselves much hampered in the inquiry by the fact that in 1927 a fire destroyed the McCreary county courthouse and all of the original assessments and tax records of the county. The evidence presented on this question as to

what the assessment was as of July 1, 1921, is secondary. At the time these bonds were issued, Judge J. E. Williams was judge of the McCreary county court, and Logan Perkins was the county clerk of that county court. These gentlemen certified to the attorneys who were passing upon the validity of the bond issue that the assessed value of McCreary county as of July 1, 1921, was $6,773,101. On the trial of this case these gentlemen testified that this figure which they certified as above stated had been obtained by them from the assessor's books of McCreary county and from certificates from the state showing the franchise and railroad assessments. They further testified that this assessed valuation was that upon which a tax for road and bridge purposes might be levied. Mr. J. E. Cantrill, secretary of the Kentucky State Tax Commission, testified that such records as were available in the State Capitol in Frankfort showed a total assessed valuation for McCreary county as of July 1, 1921, of $6,779,120. He also testified that of this amount only $6,157,351 was taxable for road and bridge purposes. On further examination he admitted that the State Tax Commission had at that time the right to raise or lower these figures concerning which he had testified, and it was impossible for him to state whether they had done so in this case of McCreary county, and that even after recapitulation sheets of tax assessments have been filed, there is often added by the county clerk to the assessed valuation of a county property that should have been listed therein and which had been omitted, and these additions would not be shown by the figures which he had available. He further testified that he did not accurately know what property was exempt from the road levy in 1921. A. J. Lynn testified that the assessed valuation for road purposes in McCreary county as of July 1, 1921, was $6,-779,120. He had evidently gotten this figure from the same sources as Mr. Cantrill had gotten his figure, and it is apparent that he took the gross assessment for road purposes without considering whether all of such property was liable to assessment for road purposes or not. The witness I. N. Blevins fixed the property assessable for road purposes as of July 1, 1921, at $5,845,089. He based his calculations on sheriffs' settlements which he had found in the sheriffs' records, a most unsatisfactory method to arrive at what the assessed valuation was. Cf. Bush et al. v. Board of Education of Clark County, 238 Ky. 297, 37 S. W. (2d) 849. It seems to

be conceded by this record that the bond issue here in question required for interest and sinking fund purposes the sum of $13,010.29 per year. To raise this amount the assessment as of July 1, 1921, would have had to be $6,505,145. It will be noted that the part of Cantrill's testimony most favorable to appellants brings the assessed valuation within $350,000 of that required, whereas the testimony of Perkins and Williams most favorable to appellees is in excess of $200,000 of the sum required. Conceding arguendo the rule claimed by the appellants that this 20-cent limitation is to be measured, not by the total assessed value of the property of a county, but by that upon which taxes for road purposes may be levied, we are yet met with the condition of the proof which shows a conflict of evidence upon what was the assessed value of the property that was liable for such taxation. The chancellor came to the conclusion that the assessed valuation was sufficient to sustain the bond issue and under familiar law where the condition of the evidence is as here we take the chancellor's finding upon such issue.

It is argued, however, that at the time this bond issue was voted there had been contracted under the 1918 vote a debt of approximately $23,000 for road and bridge purposes, and that this debt was a first lien upon this 20-cent tax. But as pointed out in the cases which we have cited, there is nothing in section 157a of the Constitution that forbids in any one year the fiscal court from appropriating out of the 50-cent levy authorized by section 157 of the Constitution so much as it may desire to appropriate for these road and bridge purposes and to eke out with such an appropriation the amounts raised under either section 4307 or 4307b-1. Indeed, we have affirmed the right of the fiscal court so to do. Mitchell v. Knox County Fiscal Court, 165 Ky. 543, 177 S. W. 279. There is no showing that the fiscal court out of its general funds could not have and did not pay off this debt of $23,000, thus leaving free for the bond issue the full 20-cent levy authorized by section 157a of the Constitution. It follows from what we have said that the bond issue here involved was within the limitations prescribed by section 157a of the Constitution, and hence was valid.

The judgment of the lower court provides that the 20-cent road tax shall be collected and devoted each year throughout the remainder of the bond period to

the payment of interest and sinking fund purposes of this bond issue and thereafter if necessary until payment of the principal and interest of the bonds is made in full. This tax was only voted by the voters during the bond period. What may be the rights of the bondholders on the expiration of the bond period was neither necessary nor proper for the court at this time to determine. That is a matter that should have been left open for future determination as the exigencies of the situation at that time may require or demand. So much of the judgment as requires McCreary county to continue the levy of the 20-cent tax after the expiration of the bond period must be stricken therefrom, without prejudice to the right of the bondholders to assert whatever rights they may have against McCreary county on the expiration of that period.

The judgment as so modified must be, and it is hereby, affirmed.

Whole court sitting.