## Bobbitt et al. v. Hoffman et al.

March 7, 1947.

Rodney G. Bryson, Judge.

Johnst Northcutt for appellants.

David R. Castleman, Shumate and Shumate and Robert C. Simmons for appellants.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

This action was instituted as a class suit in the Kenton Circuit Court. Plaintiffs sued, as representatives of

the Locomotive Firemen of the Cincinnati Division of the L. & N. Railroad, for the purpose of voiding a judgment of the Estill Circuit Court, and abrogating an injunction of that court.

The Estill County action had its origin in a dispute between trainmen of the Cincinnati Division and the Eastern Kentucky Division of the L. & N. as to which division members would man trains over the trackage between Patio and Ravenna, Kentucky, which is situated within the Eastern Kentucky Division and on the border between the two divisions.

In the Estill litigation the only parties were the L. & N. Locomotive Engineers and their Bargaining Agent. The Locomotive Firemen were not parties to that suit.

It appears that in order to resolve the difficulty, an agreement was entered into in 1919 to the effect that Engineers and Firemen of the Cincinnati Division could operate trains from any point of origin on the Cincinnati Division over the disputed trackage, and any trains originating on that trackage to any point in the Cincinnati Division without accounting or adjustment with the Engineers of the Eastern Kentucky Division. Eastern Kentucky Engineers were given a like privilege with respect to manning and operating trains from points in the Eastern Kentucky Division over the trackage, and from the trackage to any points in the Eastern Kentucky Division. With respect to traffic having its origin and destination within the disputed trackage, the regularly assigned service was to be divided equally between Engineers of the respective divisions. This agreement is evidenced by a letter written to Mr. B. M. Starks, General Manager, L. & N. Railroad, and signed by the General Chairman of each of the Brotherhoods of Locomotive Engineers, Locomotive Firemen and Enginemen, Order of Railway Conductors and Brotherhood of Railway Trainmen, requesting the above arrangements, and a reply by Starks to the General Chairman of each of the above Brotherhoods agreeing to comply with the request, but stating that in order to provide satisfactory operating conditions, the territory in question was being transferred to the Eastern Kentucky Division.

It appears that in 1927 a general contract governing interdivisional runs, and the manning of trains thereon,

was entered into between the Railroad Company and all its Engineers. Under this 1927 contract the operation of trains on this Patio-Ravenna run fell to the Eastern Kentucky Division Engineers, since it had been placed wholly in their division. The Cincinnati Division Engineers continued operating this run as they had done pursuant to the 1919 agreement.

The Eastern Kentucky Division Engineers sought to have their General Chairman obtain a ruling from the Railroad Company rearranging their assignments so as to give them the benefits of the 1927 contract. The Bargaining Agent declined to grant them this relief, insisting that they were not entitled to a readjustment under the contract of 1927, but were entitled to assignments pursuant to the previous contract made in 1919. The Brotherhood law provides that the decision of the General Chairman shall stand as "law" until "repealed" on an appeal submitted to a referendum vote of all members of all divisions of the L. & N. system. The laws of the Brotherhood further provide that the decision of the referendum shall be final.

After their General Chairman had thus decided against them, the Eastern Kentucky Engineers, pursuant to the "Constitution and Statutes of the Brotherhood of Locomotive Engineers" appealed from his decision to a referendum vote by the Engineers of the entire L. & N. system. As result of this referendum vote, the decision of the General Chairman was overruled and Eastern Kentucky Engineers were held to be entitled to assignments under that section of the 1927 contract respecting interdivisional runs.

The General Chairman, then, by letter bearing date December 31, 1941, wrote to the Railroad Company asking it to put into effect the interdivisional runs "section of the Engineers contract according to its terms." Thereupon, Mr. Johnston, the Grand Chief Engineer of the Brotherhood undertook to repudiate his previous authorization of the referendum, and to nullify the decision which the working Engineers on the entire system had made by the referendum vote. Then the General Chairman, on January 14, 1942, by letter, withdrew his request as per his letter of December 31, 1941. Thereupon, the Brotherhood of Eastern Kentucky Engineers

brought their suit through G. F. Hoffman, as their class representative in the Estill Circuit Court against J. N. Hatcher, General Chairman, and J. A. Hennessey, an Engineer employed on the Cincinnati Division as the representative of his colleagues. They alleged that by the expressed terms of the Brotherhood laws, the referendum above was final and conclusive as to their rights. They asked the court for a declaration of rights and for a mandatory injunction requiring their Bargaining Agent, Hatcher, to use all diligence and faith in obtaining from the Railroad an application of the Engineers' contract to the interdivisional runs. The defendant, J. A. Hennessey, for himself, and all other Locomotive Engineers employed on the Cincinnati Division, through their attorney, immediately filed in the Estill Circuit Court a petition for the removal of the case to the Federal Court of the Eastern District of Kentucky. Upon hearing by that court the case was remanded to the State court. Following this the defendant filed numerous pleadings and participated in a trial for three days in the Estill Circuit Court, which resulted in a final judgment wherein the court declared: That under the constitutional laws of the Brotherhood the referendum decision was final; that the Engineers were entitled to assignments on "interdivisional runs" in accordance with the 1927 contract; that the attempt of the Grand Chief to nullify such decision was arbitrary and capricious; and that it was the duty of Hatcher as General Chairman and Bargaining Agent for the L. & N. system, diligently to seek to obtain approval of the L. & N. Railroad for assignment of Eastern Kentucky Engineers to interdivisional runs as requested in the letter written on December 31, 1941, above referred to.

The Cincinnati Division Engineers undertook an appeal to the Court of Appeals. Having not been perfected in time as provided by the statute, the appeal was dismissed and the judgment became final.

The instant action, for the purpose of abrogating this judgment, was brought by C. L. Bobbitt, Jr. and H. L. Foster, who sued for all other persons similarly employed as Locomotive Firemen by the L. & N. Railroad Company on its Cincinnati Division. Hoffman, who was plaintiff in the Estill case; Hatcher, the Bargaining Agent; Hennessey, defendant in the Estill action; Harry

J. Roadcut, H. R. Hutchins, and all Locomotive Engineers similarly employed by the L. & N. Railroad on its Cincinnati Division; and J. N. Hatcher, as General Chairman of the General Committee of Adjustment of the Brotherhood of Locomotive Engineers on the L. & N. Railroad system, were named defendants.

This action, filed under the declaratory judgment act, seeks the following relief; (1) To have the Estill judgment adjudged void. (2) To have the Estill judgment adjudged to have no effect on the rights of the plaintiff Firemen as to seniority. (3) A declaration of rights, and (4) To have the General Chairman enjoined from carrying out the Estill court's injunction.

Numerous demurrers and motions were filed in the Kenton Court, after which answers were filed by the parties defendant, and eventually the petition was dismissed upon Hoffman's demurrer thereto. The Firemen appeal, alleging numerous errors.

The first ground of invalidity of the Estill judgment alleged by the appellant is that the Estill plaintiffs were without authority to name one person to defend for the Cincinnati Division Engineers as a class, and that, therefore, the defendant, Hennessey, was before the court only in an individual capacity, being without the consent or authority of the class to defend for them. It will be noted that the Cincinnati Division Engineers were sued as a class under the provisions of the Civil Code of Practice, section 25, and Hennessey was personally served as their representative. The court by order authorized and directed Hennessey to defend as a representative of the Cincinnati Division Engineers. Through counsel the action was contested to final judgment. We cannot agree with appellant in this contention. See Covington Trust Co. of Covington v. Owens, 278 Ky. 695, 129 S. W. 2d 186, 189.

The second ground of invalidity alleged is that the appellants were indispensable parties to the Estill Court action since they were parties to the 1919 agreement. Consequently, there was, thus, a fatal defect of parties. They insist that this ground is emphasized by a community of interest between the Firemen and Engineers by virtue of a 1920 seniority agreement, wherein there were

certain promotional and seniority rights existing between Firemen and Engineers.

In answer to this, appellees take the position that the 1919 agreement referred to, in no way attempts to affect the rights of the separate Brotherhoods or to render it impossible for the separate Brotherhoods to rearrange assignments when they see fit so to do. They insist further that the 1919 agreement is terminable at the will of any party since there is no provision for specific time of duration. In the case of Braddom v. Three-Point Coal Corp., 288 Ky. 734, 157 S. W. 2d 349, a contract (such as the 1919 agreement) providing no specific time of duration is terminable at will by any party thereto. In fact, in the case of Day v. Louisville & N. R. Co., 295 Ky. 679, 175 S. W. 2d 347, it was held that the conductors who were also parties to that 1919 agreement had an unfettered right to establish new working conditions without respect to the 1919 agreement. These Brotherhoods are separate and distinct. Even under the seniority agreement of 1920 the right of Firemen to intervene in the affairs of the Engineers does not accrue, by virtue of that agreement, until they are promoted from Firemen to Engineers. We, therefore, must disagree with the appellants on this ground.

The third ground of invalidity is that the Estill action was contrary to the Constitution, Statutes, and standing rules of the Brotherhood. This question was a matter to be decided by the Estill Court. The Estill Court's decision is reviewable only on appeal. The Firemen, being members of an entirely separate union, and solely subject to, and affected by, the laws of their own Brotherhood, cannot thus raise this question as against another Brotherhood.

The last ground is directed at the wording of the injunction issued by the Estill Circuit Court. They insist that the injunction is void because "diligence and good faith" cannot be enjoined. With reference to that question, we need only say that it is a matter lying solely within the discretion of the Estill Court in the enforcement of its injunction.

Wherefore, we conclude that the court properly dismissed the petition of the plaintiffs. The judgment is affirmed.